## Application of LUNDAL.
### Patent Appeals No. 5586.

United States Court of Customs and
Patent Appeals.
June 28, 1949.

Norman E. H. Deletzke, Chicago, Ill., for appellant.

W. W. Cochran, Washington, D. C., (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JACKSON, Associate Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner, finally rejecting all of the claims, 9 to 17, inclusive, 19 to 25, inclusive, and 28, of an application for a patent, serial No. 494,966, filed July 16, 1943, entitled "Separator and Separation Process," as unpatentable over the cited prior art.

Claim 28 was further held by the board as failing to define a structure that will produce the result sought by appellant. Three article claims and two process claims were allowed.

The cited references are:

Strezynski, 1,893,005, January 3, 1933.
Strezynski, 2,022,814, December 3, 1935.
Hall, 2,214,831, September 17, 1940.

The device defined in the rejected claims is a centrifugal separator used in separating fractions of sour cream, which are concentrated butter fat, skim-milk and coagulated proteins. In the operation of the device, it is said that the free flow of the cream is not blocked or obstructed by the accumulation of unwanted materials, such as coagulated proteins.

The centrifuge, as shown in appellant's drawing, comprises what is called a primary or interior separation chamber and a final or secondary outer separation chamber, both surrounded by a centrifugal bowl of the rotary type which forms the wall of the final separation chamber. The bowl rests upon, and is driven, by a tapered shaft which extends into a complimentary conical hollow spindle. The spindle is integral with the central portion of the lower wall of the outer separator bowl. The bowl is constructed so that the lower section thereof is joined to the upper section a short distance above a plane which is the maximum diameter of the bowl between its upper and lower extremities. Along the maximum diameter are a number of outlets through which the heaviest fraction of separation, such as coagulated proteins, may be discharged. Connected with the upper portion of the conical surface of the outer bowl is a conical cap section secured by a coupling which locks the upper and lower parts of the bowl together. At the top of the bowl, the wall tapers into a centrally formed neck portion, partially closed by a ring dam and a screw coupling. An outlet for the discharge of the intermediate fraction of separation such as skim-milk, and another outlet for the discharge of the lighter fraction, such as concentrated cream or concen-

trated milk fat, are coaxial with the neck of the device. The centrifuge is fed by means of a tube which extends downwardly and centrally of the said neck. The lower portion of the tube is expanded outwardly, forming the primary or interior separation chamber. The secondary or final separation chamber is bounded by the wall of the infeed tube and the interior surface of the outer bowl. In the outer bowl are a series of stratifying or separating disks running through the middle thereof and held in position by vanes on the surface of the tube and vanes integral with the cap portion of the outer bowl. Through the wall of the primary separation chamber and running inwardly therefrom toward the axis of rotation are escape tubes designed as passageways for the lighter constituents from the primary chamber into what is called the neutral zone of the secondary separation chamber. The mouths of those tubes face directly aligned openings in all the stratifying disks, and that portion of the device consisting of those openings is said to be the neutral or intermediate zone.

It is stated that the interior ends of the escape tubes are placed closer to the axis of rotation than to the interior wall of the said tube for the reason that, as so constructed, material which has not been subjected to primary separation in the first or primary chamber is prevented from entering the tubes through which it could pass into the secondary separation chamber.

The centrifuge separator bowl disclosed by appellant is commonly known as a "balanced bowl." That type of bowl is said to comprise the positioning of the apertures in the stratifying disks in the neutral zone for the materials being separated. It is further said that the neutral zone is determined by the prevailing static heads of the liquids of different specific gravity in the axial outlet tubes through which the concentrated cream and the skim milk are discharged. Near the bottom of the interior of the primary separating chamber are tubular ports extending through the wall thereof, directly to the outer zone of the secondary chamber, at a point beyond the neutral zone, for the passage of the heavier fractions of separation. Those fractions, after having passed into the secondary chamber, are extended by means of centrifugal force upwardly along the interior wall of that chamber until discharged at the passages which are placed around the device at its widest diameter. It is said that together with the coagulated proteins, enough skim-milk passes so that the ports remain in a clean condition.

On the interior wall of the infeed tube, integral therewith, and extending lengthwise and inwardly thereof in a radial direction, are a number of vanes. They extend downwardly to the same number of the said discharge tubes.

The Strezynski patent, 1,893,005, relates to a balanced centrifugal separator bowl and the device of the patent, as it appears from the drawing thereof, seems very similar to that defined in the rejected claims. There is disclosed a downwardly and centrally positioned feed tube with an expanded lower end forming the primary separation chamber. There is a secondary chamber formed by the outer wall of the device and the walls of the said tube and interior chamber. Within the secondary chamber there are stratifying disks and a neutral zone extending therethrough. The only material difference, in our opinion, between the device of the patent and that of appellant, is that the escape tubes from the primary to the secondary chamber do not face the neutral zone, and the passages for the heavier materials do not extend from the interior chamber beyond the neutral zone in the secondary chamber. The latter tubes face the neutral zone of the device. It is stated in the specification of the patent that,

"In my improved bowl the portion of the lighter component which separates in the tubular shaft flows through the tubes r to the zone of lighter component inside the bowl so that the discs are required to separate from the heavier component only that portion of the lighter component which does not separate under the lesser centrifugal force in the tubular shaft."

The Strezynski patent, 2,022,814, likewise discloses a balanced centrifugal bowl. It was cited by the examiner as disclosing

a discharge port for the heavier ingredients not shown in the former Strezynski patent. The examiner held that to provide the device of the former Strezynski patent with the peripheral discharge means disclosed in the latter Strezynski patent would not involve invention.

The Hall reference relates to a centrifuge for clarifying and standardizing milk. In the device of the patent milk is forced upwardly by means of a pump into a centrifuge through a tube and two small ports into a discharge tube which is expanded at its lower end. From that end there is a discharge tube which does not extend beyond the vanes in the separating chamber. Near the top of the discharge tube, which is angular in shape, is a port which permits the removal of a portion of the milk being clarified at a point facing the openings in the lowermost stratifying disks, which alone are provided with openings.

The examiner rejected claims 9 to 14, inclusive, and 19 to 22, inclusive, as not patentable over the Strezynski patent, 1,-893,005, and claims 15 to 17, inclusive, and 23 to 25, inclusive, on that Strezynski patent in view of the Strezynski patent, 2,-022,814. Claim 28 was rejected on the patent to Hall taken with the patent to Strezynski, 2,022,814. The board affirmed all of those rejections and in addition, as hereinbefore mentioned, held that claim 28 failed to define a structure capable of obtaining the results sought by appellant.

The Board of Appeals confined its discussion to what it held to be representative claims for the stated reason that so many claims were presented that it was not expedient to discuss them separately. However, there was no holding of undue multiplicity of claims.

The board considered claim 9 as representative of a group, 9 to 14, inclusive; claim 15 as representative of another group, 15, 16, 17, 23, 24, and 25; and claim 19 as representative of the group, 19 to 22, inclusive. Claim 28, as already mentioned, was considered by itself. The board thus applied the prior art to the broadest claim in each group, and in view of our conclusion, we will consider the claims in like fashion.

Claims 9, 15, 19, and 28 read as follows:

"9. In a bowl for a centrifugal separator, the combination of, a hollow centrally positioned tube, a primary separation chamber at the lower end of said tube formed of an expanded portion of said tube, a final separation chamber surrounding said primary separation chamber and extending radially substantially beyond the outer periphery of said primary separation chamber, *a first passage through the outer peripheral portion of said primary separation chamber to an outer zone of said final separation chamber, and a second passage extending from within said primary separation chamber to an intermediate zone of said final separation chamber.* (Italics ours.)

"15. In a bowl for a centrifugal separator, the combination of, a hollow centrally positioned tube, a primary separation chamber at the lower end of said tube formed of an expanded portion of said tube, a final separation chamber surrounding said primary separation chamber and extending radially substantially beyond the outer periphery of said primary separation chamber, *a first passage through the outer periphery portion of said primary separation chamber to an outer zone of said final separation chamber, a second passage extending from within said primary separation chamber to an intermediate zone of said final separation chamber,* and a discharge port in the outer periphery of said final separation chamber. (Italics ours.)

"19. In a bowl for a centrifugal separator, the combination of, a hollow centrally positioned tube, a primary separation chamber at the lower end of said tube, a final separation chamber surrounding said primary separation chamber and extending radially substantially beyond the outer periphery of said primary separation chamber, *a first passage through the outer peripheral portion of said primary separation chamber to an outer zone of said final separation chamber, and a second passage extending from within said primary separation chamber to an intermediate zone of said final separation chamber.* (Italics ours.)

"28. In a centrifugal separator for the separation and concentration of sour cream

into coagulated protein, skim-milk and concentrated butter fat, a final centrifugal separation chamber for the final separation and concentration of sour cream into coagulated protein, skim-milk and concentrated butter fat, a primary centrifugal separation and concentration chamber for the primary separation and concentration of coagulated protein from sour cream, said primary separation and concentration chamber having a cream inlet and being positioned within said final separation chamber and adapted to rotate therewith, stratifying disks within said final separation chamber, *first coagulated protein discharge passage through the wall of said final separation chamber in a portion of the wall having the greatest diameter,* skim-milk outlet and concentrated butter fat outlet in the upper wall of said final separation chamber, *a cream discharge passage extending through the wall of said primary separation chamber and adapted to discharge cream which has been subjected to primary separation into the spaces between said stratifying disks at the neutral zone of said final centrifugal separation chamber from a portion of the interior of said primary separation chamber remote from the outer peripheral wall thereof, and a second coagulated protein discharge passage for discharging primarily separated and concentrated coagulated protein from the outer portions of said primary separation chamber into said final separation chamber at a point beyond the neutral zone of said final centrifugal separation chamber, said first coagulated protein passage being of such capacity as to permit the discharge therethrough of sufficient skim-milk portion of the separated sour cream as to aid in the discharge of coagulated protein from said final separation chamber through said first coagulated protein discharge passage.*" (Italics ours.)

The italicized portions of the quoted claims are contended by appellant to be sufficient to distinguish them from the cited prior art, whether that art be considered singly or in combination.

 Counsel for appellant points out in his brief, and properly so we think, that the device of the application contains pat-

entably unique structural aspects wherein his centrifuge comprises not only primary and secondary separation chambers, but passage means for *"by-passing the primarily separated, heavy fraction of separation past the neutral zone of the centrifuge and past the stratifying disks * * *."* (Italics ours.)

Attention is first directed to the emphasized portion of claim 9. That claim and the group of which it was held by the board to be representative were rejected upon the Strezynski patent, 1,893,005. The structure of the patent device, as hereinbefore described, shows that it has two passages, as does the device of appellant, both extending from the primary separating chamber into the final separating chamber. However, those passages do not extend to "an outer zone of said final separation chamber" and "to an intermediate zone of said final separation chamber" respectively.

In view of the result sought to be obtained by appellant—to completely by-pass the heavy unwanted materials around the intermediate zone and to conduct the lighter materials directly into the neutral zone—neither of which is possible in the device of the patent, the decision of the board, in our opinion, should be reversed with respect to claim 9 and the group of which it is representative.

Claim 15 and the group of which it was said to be representative were rejected on the earlier Strezynski patent in view of his latter patent. The board held that claim 15 differs from claim 9 in requiring a discharge port in the outer periphery of the final separation chamber. The examiner held that it would not involve invention to add to the structure of the first Strezynski patent the sludge separating ports of the second Strezynski patent. However, even if those statements are true, nevertheless, claim 15 provides for "a first passage through the outer periphery portion of said primary separation chamber to an outer zone of said final separation chamber, a second passage extending from within said primary separation chamber to an intermediate zone of said final separation chamber, * * *." Those limitations, in our opinion, which are substantially a rep-

etition of those contained in claim 9 warrant a reversal of the decision of the board with respect to claim 15 and the group of which it is representative.

With respect to claim 19, the board held that claim to differ from claim 9 in further defining the form of the primary separating chamber, pointing out that such form is shown by Strezynski. Claim 19, however, in the italicized portion thereof contains substantially the same structure as claims 9 and 15 with respect to the passageway from the primary separation chamber to the outer zone of the final separation chamber, and, therefore, in our opinion, that group of claims, 19 to 22, inclusive, is patentable over the prior art, and the decision of the board should be reversed in that respect.

■ Claim 28 was finally rejected on a combination of the Hall patent with the Strezynski patent, 2,022,814. The examiner held claim 28 readable on the device of the Hall patent except for the limitation of providing the periphery discharge port through the outer bowl wall of the secondary separation zone. The examiner held it would not require invention to provide the device of the Hall patent with such an outlet, as is disclosed in the Strezynski patent, 2,022,814. The board held that rejection to be proper and further stated that, while the claim defined the passageway from the first separating chamber to the neutral zone of the final separating chamber, it failed to define the limitation of the port extending from the first to the outer zone of the second chamber, and, therefore, as hereinbefore noted, did not define a structure adapted to obtain the results sought by appellant.

Claim 28 specifically states as follows: "and a second coagulated protein discharge passage for discharging primarily separated and concentrated coagulated protein from the outer portions of said primary separation chamber into said final separation chamber at a point *beyond* the neutral zone of said final centrifugal separation chamber * * *." (Italics ours.) It clearly appears to us that the discharge passage extending from the primary chamber into the final separation chamber at a point "beyond the neutral zone of said final separation chamber" means that the discharging end of the passage is located outwardly past the neutral zone of that chamber. That claim, in our opinion, is specific in defining the limits of the ports and passageways with respect to both of the chambers.

The Strezynski patent, 2,022,814, it seems to us, provides for the passage of all of the material being separated through the stratifying disks of the device. Likewise, the device of the Hall patent contemplates the passing of all the material being separated through the stratifying disks. Neither of those patents, as we see it, discloses or suggests a primary separation chamber, such as that specifically called for by claim 28, wherein the different fractions of primarily separated material are discharged into different zones of separation in the final separation chamber, which zones, as stated in appellant's brief, occupy different positions in the final separation chamber with respect to the neutral zone thereof.

Therefore, the decision of the board affirming that of the examiner, rejecting claim 28, is reversed.

For the reasons hereinbefore set out, the decision of the Board of Appeals is in all respects reversed.

Reversed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.